Filed 7/7/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CITY OF CLEARLAKE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HIGHLANDS MUTUAL WATER COMPANY,<br><br>     Defendant and Appellant. | A172743<br><br>(Lake County<br>Super. Ct. No. CV425596) |

Defendant Highlands Mutual Water Company (Highlands) appeals the trial court's decision to grant plaintiff City of Clearlake (City) a preliminary injunction requiring Highlands to re-issue shares the City held in Highlands and that Highlands cancelled pursuant to Corporations Code section 14300, subdivision (a), which directs the secretaries of mutual water companies to cancel "appurtenant" shares held by public entities. This appeal requires an examination of the interaction of Corporations Code section 14300, subdivision (a), with article XVI, section 17 of the California Constitution, a voter-approved initiative adopted in 1976. Section 17 prohibits public entities from owning stock in private companies except where the public entity acquires or holds stock in a mutual water company "for the purpose of furnishing a supply of water for public, municipal or governmental purposes."

In the present case, the City sued Highlands for denying the City its right as a shareholder to inspect Highlands's records. Highlands

1

subsequently cancelled the shares the City held in Highlands, all of which were appurtenant to land owned by the City. As a result, the City sought an injunction requiring Highlands to re-issue the shares on the ground that Corporations Code section 14300 violated section 17. The trial court agreed that Corporations Code section 14300 was unconstitutional and granted the injunction.

Applying the presumption in favor of the constitutional validity of statutes, we conclude Corporations Code section 14300, subdivision (a), does not violate section 17. We therefore reverse the order granting the motion for preliminary injunction.

## I.     BACKGROUND

### A. Legal Background of Corporations Code Section 14300

Highlands is a mutual water company. Mutual water companies are distinguished from nonmutual water corporations and public utilities in that they are organized for the purpose of distributing water only to their shareholders. (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1115–1116; Pub. Util. Code, §§ 2705, 2725; see Pub. Util. Code, § 2702 [a corporation that "delivers water to others than its stockholders or members, . . . is a public utility"].) Shares in a mutual water company give the shareholder rights to a proportionate distribution of the available water. (*De Boni Corp. v. Del Norte Water Co.* (2011) 200 Cal.App.4th 1163, 1170; *Lindsay-Strathmore Irr. Dist. v. Wutchumna Water Co.* (1931) 111 Cal.App. 688, 694.)

Shares in a mutual water company can take the form of either appurtenant shares or non-appurtenant shares. (*In re Estate of Thomas* (1905) 147 Cal. 236, 238; *Lindsay-Strathmore Irr. Dist. v. Wutchumna Water Co., supra,* 111 Cal.App. at p. 694; *Orange County Water Dist. v. City of*

2

*Riverside* (1959) 173 Cal.App.2d 137, 194.)  Shares that are appurtenant are attached to specific land and constitute real property.  (*In re Estate of Thomas*, at p. 238; *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 255.)  They pass automatically with conveyance of the land, can only be conveyed with the land, and must be used to benefit the land.  (*Wheat v. Thomas* (1930) 209 Cal. 306, 316 [noting that shares in a mutual water company that are appurtenant to land will "pass[] by the deed . . . by implication of law"]; *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 763; Civ. Code, § 662 ["[a] thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit"].)  In contrast, non-appurtenant shares are "personal property in the same sense as other corporation stock."  (*In re Estate of Thomas*, at p. 238.)

When mutual water companies were first formed in the state, the shares in the companies, as distinguished from the underlying water rights, were not considered appurtenant to certain lands.  In the nineteenth century, it was common for large landowners to subdivide their land and sell the parcels to new settlers "with a proportionate share of the water appurtenant to the land."  (*Thayer v. California Development Co.* (1912) 164 Cal. 117, 135; Russell, *Mutual Water Companies in California* (1939) 12 So.Cal. L.Rev. 155, 155–156.)  Many of these settlers would then pool their resources to form mutual water companies "to effect economy and promote convenience by use of joint production and distribution facilities."  (*Las Posas Valley Water Rights Coalition v. Ventura County Waterworks Dist. No. 1* (2026) 118 Cal.App.5th 1170, 1189; *Orange County Water Dist. v. City of Riverside*, *supra*, 173 Cal.App.2d at p. 194.)  The settlers would convey their individual water rights to the company, " 'but the rights remain[ed] appurtenant to the lands of the stockholders.  [Citations.]  The company [was] merely the agent

3

of the riparian or overlying landowner whose rights [were] being exercised on their behalf.' " (*Orange County Water Dist. v. City of Riverside*, at p. 194; see *Stratford Irr. Dist. v. Empire Water Co.* (1943) 58 Cal.App.2d 616, 619; *Locke v. Yorba Irr. Co.* (1950) 35 Cal.2d 205, 206.)

At that time, it was well-established that a conveyance of land did " 'not carry as appurtenant to the land certificates of stock in a corporation.' " (*Palo Verde Land & Water Co. v. Edwards* (1927) 82 Cal.App. 52, 60.) This meant that even if the water right represented by the stock was appurtenant to land, the shareholder could sever the water right from the land by transferring the shares. (*In re Estate of Thomas*, *supra*, 147 Cal. at pp. 242–243.)

However, in the late nineteenth century, the Legislature enacted former Civil Code section 324 (*Thayer v. California Development Co.*, *supra*, 164 Cal. at pp. 135–136), which provided that "a corporation organized for, or engaged in the business of selling, distributing, or supplying water for irrigation purposes or for domestic use" may provide in its bylaws that the "stock shall be appurtenant to certain lands when they are described in the certificates issued therefor" and the bylaws are recorded in the office of the county recorder in the county where such lands are situated (*Palo Verde Land & Water Co. v. Edwards*, *supra*, 82 Cal.App. at pp. 56–57). Under former Civil Code section 324 (and its successor, former Civil Code section 330.24), shares in a mutual water company constituted personal property unless the mutual water company complied with the requirements of the statute to make the shares appurtenant to certain lands. (*Palo Verde Land & Water Co. v. Edwards*, at p. 57; see *Wheat v. Thomas*, *supra*, 209 Cal. at p. 315; *Crescent Canal Co. v. Kings County Development Co.* (1941) 43 Cal.App.2d 370, 374 [noting that "water rights may become appurtenant to

4

certain lands in at least two ways": compliance with former Civ. Code, § 330.24 and where the corporation sells both the water and the land].)

As relevant to this appeal, former Civil Code section 330.24 was amended in 1935 to add the following provisions:  a corporation organized for or engaged in the business of supplying water for irrigation purposes or domestic use "may sell water to the State, or any department or agency thereof, or to any school district, at the same rates as to holders of shares of such corporations.  In the event lands to which any such stock is appurtenant are owned or purchased by the State, or any department or agency thereof, or any school district, such stock shall be canceled by the secretary, but shall be reissued to any person later acquiring title to such land from the State department, agency, or school district." (Stats. 1935, ch. 305, § 1, p. 1031.) The statute was again amended in 1951 to permit mutual water companies to sell water to "any public agency," in addition to the State and "any department or agency thereof." (Stats. 1951, ch. 790, § 1, p. 2279.)

Former Civil Code section 330.24 was repealed in 1997 and replaced by Corporations Code section 14300.  (Stats. 1997, ch. 598, § 3.)  Corporations Code section 14300 is almost identical to former Civil Code section 330.24 except that it *requires* corporations organized for or engaged in the business of distributing or delivering water for "domestic use" to have provisions in its articles or bylaws that water shall be sold, distributed, supplied, or delivered only to owners of its shares and that the shares shall be appurtenant to certain lands.  (Corp. Code, § 14300, subd. (a); see Legis. Counsel's Dig., Sen. Bill No. 633 (1997–1998 Reg. Sess.), ch. 598.)  Corporations organized for or engaged in the business of distributing or delivering water for "irrigation purposes" retain discretion to include such provisions in their articles or bylaws.  (Corp. Code, § 14300, subd. (a).)

5

Similar to its predecessor, Corporations Code section 14300 also states that the secretary "shall" cancel "appurtenant" shares held by "the state, or any department or agency therof, or any school district, or public agency," but permits mutual water companies organized for or engaged in the business of distributing or delivering water for domestic use or irrigation purposes to sell water to those public entities "at the same rates as to holders of shares of the corporations." (Corp. Code, § 14300, subd. (a).) The cancellation of the shares "is *mandatory* because the word 'shall' is used." (*Mediterranean Exports, Inc. v. Superior Court* (1981) 119 Cal.App.3d 605, 615.) The provision also appears to be self-executing in that it does not contemplate any further action by the Legislature or any other entity or individual before the secretary cancels the shares. (Corp. Code, § 14300, subd. (a).)

In sum, shares in a mutual water company are non-appurtenant unless the mutual water company is organized for or engaged in the business of delivering or distributing water for domestic use or irrigation purposes and the company has complied with the provisions of Corporations Code section 14300 or its predecessors. (See *Palo Verde Land & Water Co. v. Edwards*, *supra*, 82 Cal.App. at p. 56; *Wheat v. Thomas*, *supra*, 209 Cal. at p. 315; *Richmond v. Dofflemyer*, *supra*, 105 Cal.App.3d at p. 763.) Moreover, since 1935, the secretaries of mutual water companies are required to immediately cancel appurtenant shares held by public entities, but the public entities can still obtain water for their land by purchasing water from the mutual water companies. (Corp. Code, § 14300, subd. (a); Stats. 1935, ch. 305, § 1, p. 1030.)

## B. Factual Background

In June 2024, the City sued Highlands, asserting two causes of action. For the first cause of action, the City alleged that Highlands held an invalid

6

board of directors election under Corporations Code section 709. The second cause of action asserted that Highlands unreasonably rejected the City's demand to inspect Highlands's corporate records, thereby violating Corporations Code section 1601, which requires the records of any domestic corporation be open to inspection upon the written demand of any shareholder "for a purpose reasonably related to the holder's interests as a shareholder."

A few months later, the trial court issued a temporary restraining order invalidating Highlands's board of directors election. The court ordered Highlands to notice and conduct a new election within 45 days of the issuance of the order, which Highlands did. It does not appear from the record that the City challenged the results of this election.

In November 2024, Highlands's directors adopted a resolution to cancel all shares of stock that were appurtenant to real property acquired and held by governmental agencies. Highlands informed the City that it had cancelled the City's shares—all of which were appurtenant to land owned by the City— as "required by law," citing Corporations Code section 14300. It confirmed that it would continue to sell water to the City, as permitted by the statute. The City subsequently learned that Highlands planned to hold a special board of directors meeting in January 2025. One of the agenda items for the meeting was to discuss amending the company's bylaws to redefine "shareholder" to include only owners of real property with a water connection from the company and to exclude public entities.

In response, the City filed an ex parte application for a temporary restraining order prohibiting Highlands from adopting the amended bylaws or taking any other action that altered or abridged the status of any of its shareholders absent permission from the court. The City argued it was likely

to prevail on the merits because the proposed amendment to the bylaws was invalid for multiple reasons, including that Corporations Code section 14300 conflicted with the City's rights under article XVI, section 17 of the California Constitution (hereinafter, section 17) to acquire and hold shares in "any mutual water company or corporation . . . for the purpose of furnishing a supply of water for public, municipal or governmental purposes." (§ 17.)

At the hearing on the application, Highlands argued that granting the City a restraining order would not "preserve the status quo" because Highlands was required to cancel the City's shares under Corporations Code section 14300. Highlands further argued that section 17's exception to the constitutional prohibition of public entities owning stock in private companies did not apply in this case, because the City never alleged it supplies water for public, municipal, or governmental purposes. The City responded that the Constitution did not require it to "be a purveyor of water" for the exception to apply; rather, it was sufficient that the City was using water for a public purpose.

After the matter was submitted, the trial court issued a temporary restraining order prohibiting Highlands from taking any action that altered or abridged the status of any shareholder and ordered the parties to appear and show cause as to why a preliminary injunction should not issue against Highlands to prohibit it from taking such action.

The City subsequently filed a motion for preliminary injunction to require Highlands to re-issue and deliver to the City its cancelled shares and to prohibit Highlands from taking any action to alter or abridge the status of any shareholder. The City again argued it was likely to succeed on the merits because the requirement in Corporations Code section 14300 to cancel appurtenant shares held by public entities was unconstitutional under

8

section 17.  It claimed that the phrase " 'furnishing a supply of water' " in section 17 does not refer to the City supplying customers with water.  The City further argued it was "immaterial" that some of its parcels were not yet connected to Highlands's system because the City was holding the shares to secure water for its parcels, and the "nature of the City's use of that water is for the City's public, municipal, and governmental services."  It contended it would suffer irreparable injury if an injunction did not issue, and that the balance of equities favors granting a preliminary injunction.

Accompanying the motion were the declarations of the City's attorney and the City's manager.  Attached to the attorney's declaration was a letter the attorney sent to Highlands, in which he stated in part that many of the City's parcels did not have water connections.  No further details were provided about the City's parcels in either of the declarations.

Highlands opposed the motion.  It asserted the City had no probability of prevailing on its claims in part because Corporations Code section 14300 required it to cancel the City's stock.  It disagreed with the City that the statute was unconstitutional, arguing that the statute and section 17 were intended to work in tandem.  According to Highlands, section 17 allowed public entities to own stock in a mutual water company only where the public entity was providing "water to its constituents at large, rather than . . . to a particular piece of land owned by the public agency."  Highlands further argued that the balance of harms tipped in its favor.

In reply, the City argued that section 17's "plain" language "fatally and totally" conflicted with Corporations Code section 14300 because it granted the City the right to own shares in Highlands, and Corporations Code section 14300 "prohibits the express right provided for in the constitution."  Accompanying the reply was an excerpt from the transcript of the deposition

9

of Highlands's person most knowledgeable, which showed that one of the parcels of land owned by the City "is a concrete area where there's water activities for the community."

At the outset of the hearing on the motion for preliminary injunction, the trial court issued a tentative ruling. It reminded the parties that it had "already decided the issue relating to the First Cause of Action that the election was invalid," and therefore only the City's second cause of action concerning the City's right as a shareholder to inspect Highlands's records remained. The court said it believed the City would suffer interim harm if the injunction was denied but concluded it did not need to balance the parties' hardships because, given the "plain language" of section 17, "it does not appear Highlands has any likelihood of success regarding the issue of the City being entitled to hold shares of Highlands under the law." As a result, it was "required to grant the preliminary injunction." The court acknowledged "[t]here may be a factual issue as to whether the City is using the water for a public purpose," but it found the City's operation of a "splash pad" on one of its parcels was "a valid public purpose contemplated by section 17."

In response, Highlands argued that the trial court's ruling would "run afoul of bedrock principles of statutory interpretation" in part because the court had a "duty" to "harmonize" the allegedly conflicting provisions. It reiterated its argument that section 17 provided a "narrow exception" to the prohibition of stock ownership for public entities that intended to distribute water for the public they serve.

The City replied that Highlands's interpretation of section 17 would draw "arbitrary lines" as to what constituted a "public use" sufficient to satisfy section 17's exception to the constitutional prohibition of stock ownership.

After the parties submitted, the trial court granted the injunction, concluding that Corporations Code section 14300 "in this situation as applied" was not constitutional because it conflicted with section 17.

## II. DISCUSSION

### A. *Legal Standards for Preliminary Injunction*

The decision whether to issue a preliminary injunction lies in the sound discretion of the trial court, which we do not disturb absent an abuse of discretion. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.) On appeal we do not reweigh conflicting evidence, but defer to the trial court's factual findings if they are supported by substantial evidence. (*City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 298–299.) To the extent the trial court's ruling rests on a legal issue, we review it de novo. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408.) The burden is on the party challenging the injunction to make a clear showing the trial court abused its discretion. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)

The preliminary injunction is intended to "preserv[e] . . . the status quo until a final determination of the merits of the action." (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.) In general, when considering a request for a preliminary injunction, the trial court weighs two interrelated factors. The first is the likelihood the party seeking relief will prevail on the merits, and the second is the relative interim harm to the parties if the preliminary injunction is granted or denied. (*Hunt v. Superior Court, supra,* 21 Cal.4th at p. 999; *IT Corp. v. County of Imperial, supra,* 35 Cal.3d at pp. 69–70.) "[T]he greater the plaintiff's showing on one [factor], the less must be shown on the other to obtain an injunction." (*Tulare Lake Canal Co. v. Stratford Public Utility Dist.* (2023) 92 Cal.App.5th 380, 396–397.) The

11

goal is to minimize the harm that an erroneous interim decision may cause. (*IT Corp.*, at p. 73.)

In this case, the trial court granted the City's motion for preliminary injunction on the ground that Corporations Code section 14300 was unconstitutional and thus Highlands was unlikely to prevail on the merits. As we will explain, we disagree with the trial court regarding the constitutional validity of Corporations Code section 14300.

### B. Standards of Review

A trial court's ruling on the constitutionality of a legislative act is a pure question of law, so our review is de novo. (*Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1374.) "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court of Los Angeles County* (1946) 28 Cal.2d 481, 484.) "Thus, wherever possible, we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute." (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594.) A challenge to the facial constitutionality of a statute cannot be sustained unless the statutory terms "inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181.)

Highlands's assertion that Corporations Code section 14300 is constitutional rests on the application of section 17. Therefore, we must examine the text of that constitutional provision, applying the same general principles as those on which statutory construction is based. (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122.) "The aim of

constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue. [Citation.] To determine that intent, we begin by examining the constitutional text, giving the words their ordinary meanings." (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418.)

"To the extent that the constitutional language does not resolve a dispute over its meaning, we may look to the Legislature for its interpretation." (*Persky v. Bushey* (2018) 21 Cal.App.5th 810, 819.) Two fundamental principles of constitutional adjudication guide our inquiry: " 'Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature.' " (*Pacific Legal Foundation v. Brown, supra*, 29 Cal.3d at p. 180.) As a result, the Legislature " 'may exercise any and all legislative powers which are not expressly, or by necessary implication denied to it by the Constitution.' " (*Ibid.,* italics omitted.) Moreover, " 'all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used." ' " (*Ibid.,* italics omitted.)

These principles are particularly significant in this case, as the Legislature, in enacting Corporations Code section 14300, has implicitly interpreted the relevant language in section 17's exception to the prohibition of stock ownership as excluding from the scope of the exception appurtenant shares held by public entities in mutual water companies. " 'When the Constitution has a doubtful or obscure meaning or is capable of various

13

interpretations, the construction placed thereon by the Legislature is of very persuasive significance.' " (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 693; accord, *Mt. San Jacinto Community College Dist. v. Superior Court* (2007) 40 Cal.4th 648, 656; see *Lacy v. City and County of San Francisco* (2023) 94 Cal.App.5th 238, 253–254 [applying presumption in favor of Legislature's interpretation of constitutional provisions in light of the "implicit legislative recognition" that a certain term should be construed broadly].) The Legislature's interpretation of a constitutional provision need not be " 'more probably than not' " to be upheld; it need only be " 'a possible and not unreasonable construction of the [C]onstitution.' " (*Methodist Hosp. of Sacramento*, at pp. 693–694.)

### C. Constitutionality of Corporations Code Section 14300

Applying the foregoing principles, it appears that Corporations Code section 14300's requirement to cancel appurtenant shares held by public entities was intended to give effect to section 17's general prohibition of public entities owning stock in private companies. (Corp. Code, § 14300, subd. (a); § 17.) Nothing in section 17 prohibits the Legislature from enacting a requirement to cancel shares held by public entities in private companies. We therefore presume the Legislature has that authority to the extent section 17's exception to the prohibition of stock ownership does not, by "necessary implication" (*Methodist Hosp. of Sacramento v. Saylor*, *supra*, 5 Cal.3d at p. 691), prohibit such legislative action. (See *id.* at p. 691 [" 'we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited' "].)

Section 17 provides, in pertinent part, that "[t]he State shall not in any manner loan its credit, nor shall it subscribe to, or be interested in the stock of any company, association, or corporation, except that the State and each

14

political subdivision, district, municipality, and public agency thereof is hereby authorized to acquire and hold shares of the capital stock of any mutual water company or corporation when the stock is so acquired or held for the purpose of *furnishing a supply of water for public, municipal or governmental purposes*; and the holding of the stock shall entitle the holder thereof to all of the rights, powers and privileges, and shall subject the holder to the obligations and liabilities conferred or imposed by law upon other holders of stock in the mutual water company or corporation in which the stock is so held."  (Italics added.)

It is the italicized words that are the focus of the parties' dispute. Based in part on dictionary definitions of the word "furnishing," Highlands concludes the phrase refers to situations where a public agency is "acting as a water purveyor that gains access to a supply of water and then furnishes the water throughout its territory for public, municipal, and governmental purposes."  Under this interpretation of section 17, Corporations Code section 14300's requirement to cancel appurtenant shares held by public entities does not conflict with section 17 because the holding of appurtenant shares means the public entity is merely a customer of the mutual water company limited to receiving water from the company for use on its own land.[1]

The City disagrees with Highlands's interpretation of section 17.  It points out that section 17 does not identify a "subject to whom a public agency would supply water" and instead identifies three "purposes" for which the water can be used.  It contends that the "plain language" of the phrase

---

[1] In an amicus curiae brief, the California Association of Mutual Water Companies similarly argues that the use of the term "furnishing" means the public entity is itself providing or supplying water for a public, municipal, or governmental purpose.  It contends that the City's "splash pad" is "a facility to which [Highlands] furnishes/supplies water, not [the City]."

15

"furnishing a supply of water for public, municipal or governmental purposes" means that "public entities hold the shares for the purpose of ensuring that government property has a right to receive a supply of water" to support public activities.  Thus, the City seems to define "furnishing a supply of water" to mean securing access to water.

Reviewing this language de novo, we conclude that Highlands's interpretation of section 17's exception is not only possible but probable. (*Methodist Hosp. of Sacramento v. Saylor*, *supra*, 5 Cal.3d at p. 693.) Beginning with the ordinary meaning of the words used in the provision (*Richmond v. Shasta Community Services Dist.*, *supra*, 32 Cal.4th at p. 418), neither section 17 nor the state Constitution define the term "furnishing." Historical and contemporary dictionaries define "furnishing" as "to provide or supply."  (Dictionary.com (2026) <http://dictionary.com/browse/furnish> [as of June 18, 2026]; Oxford English Dictionary (2026) <http://oed.com/dictionary/furnish_v?tab=meaning_and_use #3322241> [as of June 18, 2026].)  It is often interpreted as " 'impl[ying] some type of affirmative action on the part of the furnisher' " with respect to the thing being furnished.  (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1157.) Thus, "furnishing" as used in section 17 can be construed as requiring some affirmative action on the part of the public agency to provide "a supply of water."  (§ 17.)  It implies that the public agency is itself delivering, distributing, or transferring water to someone or something.

In context, this definition of "furnishing" supports Highlands's interpretation of section 17's exception to the prohibition of stock ownership. A "supply of" ordinarily means "an amount of something that is available for use."  (Cambridge Dictionary (2026) <http://dictionary.cambridge.org/us/dictionary/english/supply> [as of June 18,

16

2026]; Oxford English Dictionary (2026) <http://oed.com/dictionary/supply_n?tab=meaning_and_use#19716466> [as of June 18, 2026].)  If "furnishing" requires an affirmative act on the part of the public entity with respect to the water it receives from a mutual water company or corporation, "a supply of" refers to the amount of water being furnished by the public entity.  It clarifies that, in providing water, the public entity is making an amount available to use for public, municipal, or governmental purposes.  And "purpose" can be defined as "the reason something is done or *used*."  (Merriam-Webster Dictionary (2026) <https://www.merriam-webster.com/dictionary/purpose> [as of June 18, 2026], italics added.)  Construing these words together, it appears that the phrase "furnishing a supply of water for public, municipal or governmental purposes" refers to the public entity distributing or delivering water for specific uses.

While the City is correct that section 17 does not expressly mention a recipient of the water being furnished, such an omission does not render section 17 unambiguous.  The adjectives that modify "purposes"—"public," "municipal," and "governmental"—can be used to describe a wide variety of activities and governmental functions occurring within a given location.  (Oxford English Dictionary (2026) <https://www.oed.com/dictionary/public_adj?tab=meaning_and_use#27758449> [as of June 18, 2026] [defining "public" as "the opposite of private" or "that belongs to, affects, or concerns the community"]; Oxford English Dictionary (2026) <https://www.oed.com/dictionary/municipal_adj?tab=meaning_and_use#35485711> [as of June 18, 2026] [defining "municipal" as "[o]f or belonging to a municipality"]; Oxford English Dictionary (2026) <https://www.oed.com/dictionary/governmental_adj?tab=meaning_and_use#2611145> [as of June 18, 2026] [defining "governmental" as "[o]f or relating to (a) government"].)  Since public entities

17

serve certain territories within the state (see, e.g., *Wetmore v. City of Oakland* (1893) 99 Cal. 146, 150; Gov. Code, § 16271, subd. (d)), this language implies that the public entity distributing the water is doing so throughout the territory it serves. In other words, "furnishing a supply of water for public, municipal or governmental purposes" can be interpreted to mean that the public entity is securing water for its territory and distributing the water throughout that territory to be used for public, municipal, or governmental purposes. (§ 17.)

Under this construction of "furnishing a supply of water for public, municipal or governmental purposes," it appears the voters intended to exclude appurtenant shares from the scope of section 17's exception to the prohibition of stock ownership. With appurtenant shares, the public entity would not be taking any affirmative action to provide water. Rather, it is merely a consumer of water in that the mutual water company delivers water to the parcel of land to which the shares are attached, and the public entity would be limited to using the water for the benefit of that land. (*Wheat v. Thomas*, *supra*, 209 Cal. at p. 316; *Richmond v. Dofflemyer*, *supra*, 105 Cal.App.3d at p. 763; Civ. Code, § 662.) Even if the public entity is operating public facilities on the land, the public entity is providing the public with the facilities, not the water. (See *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1498 [distinguishing between a "municipal water supplier" and "the provider of municipal services which consume water"], disagreed with on other grounds in *Howard Jarvis Taxpayers Assn. v. City and County of San Francisco* (2021) 60 Cal.App.5th 227, 237.)

Thus, it is possible to interpret the phrase "furnishing a supply of water for public, municipal or governmental purposes" as excluding the acquisition

18

and holding of appurtenant shares.  (*Methodist Hosp. of Sacramento v. Saylor, supra*, 5 Cal.3d at p. 693; § 17.)

Other maxims of construction make this interpretation probable.  (See *Doe 3, Family Services Organization v. Superior Court* (2025) 110 Cal.App.5th 571, 582 [where language of a provision " 'is ambiguous, we "can look . . . to rules or maxims of construction" to resolve the ambiguity' "].)  First, repeals by implication are disfavored.  (*Singh v. Board of Retirement* (1996) 41 Cal.App.4th 1180, 1190.)  Here, former Civil Code section 324, which allowed certain mutual water companies to issue only appurtenant shares, existed long before the enactment of the relevant language in section 17's predecessor.  (*Thayer v. California Development Co.*, *supra*, 164 Cal. at pp. 135–136; Cal. Const., art. IV, former § 31b, as adopted in 1932.)  And former Civil Code section 330.24, which directed mutual water companies to cancel appurtenant shares held by public entities, was enacted before section 17's predecessor was amended to include the language section 17 currently uses for its exception to the constitutional prohibition of stock ownership. (Stats. 1935, ch. 305, § 1, p. 1030; Cal. Const., art. XII, former § 13.) Although the voters adopted a constitutional provision in 1940 that allowed the state and state agencies (but not other public entities) to own appurtenant shares, that provision was repealed in 1956 and replaced with a provision containing similar language to that in section 17, as discussed in more detail below.  (Cal. Const., art. IV, former § 31d; Cal. Const., art. XII, former § 13.)  Former Civil Code section 330.24 was subsequently amended in 1957 (Stats. 1957, ch. 217, p. 880, § 1), while section 17 was adopted in 1974 without any substantive changes to the relevant language.  "Because voters are presumed to be aware of existing laws at the time a constitutional amendment is enacted" (*Wishnev v. The Northwestern Mutual Life Ins. Co.*

19

(2019) 8 Cal.5th 199, 212), the voters who enacted section 17 presumably intended the term "furnishing a supply of water" to exclude appurtenant shares. Such an interpretation would harmonize the two provisions. (See *Singh v. Board of Retirement*, at p. 1190 [" 'we do not recognize [repeals by implication] unless two apparently conflicting laws cannot be harmonized' "].)

Further, we must interpret the phrase "furnishing a supply of water for public, municipal or governmental purposes" in the context of the entire provision of which it is a part. (*Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804; *Thompson v. Department of Corrections*, *supra*, 25 Cal.4th at p. 122.) Viewing this phrase in light of the entire constitutional provision, we doubt the voters intended section 17's exception to encompass circumstances where the public entity acquires land with appurtenant shares. By stating that public entities can "acquire and hold shares . . . *when* the stock is so acquired or held *for the purpose of . . .* " (§ 17, italics added), the voters plainly intended to prohibit public entities from acquiring or holding stock in mutual water companies and corporations unless, at the time they acquire or hold the stock, they are doing so for a particular reason. (Merriam-Webster Dictionary (2026) <https://www.merriam-webster.com/dictionary/when> [as of June 18, 20206] [defining the conjunction "when" as "at or during the time that"]; Collins Dictionaries (2026) <https://www.collinsdictionary.com/us/dictionary/english/purpose> [as of June 18, 2026] ["[t]he purpose of something is the reason for which it is made or done"].) Moreover, the preposition "for" indicates that the subsequent language—"the purpose of furnishing a supply of water for public, municipal or governmental purposes"—refers to the motive for the act of holding or acquiring shares under the exception. (See *People v. Hamilton* (1989) 48 Cal.3d 1142, 1178 ["[t]he term 'for' refers to

20

'[t]he cause, motive, or occasion of an act, state or condition' "].)  It implies that a need or demand for water for public, municipal, or governmental purposes exists or is projected to occur, and this need or demand caused the public entity to acquire or hold shares in a mutual water company or corporation to meet that need or demand.[2]  (See Merriam-Webster Dictionary (2026) <https://www.merriam-webster.com/dictionary/motive> [as of June 18, 2026] [defining "motive" as "something (such as a need or desire) that causes a person to act"]; Oxford Learner's Dictionaries (2026) <https://www.oxfordlearnersdictionaries.com/us/definition/english/purpose> [as of June 18, 2026] [noting that "for . . . purposes" refers to "what is needed in a particular situation"].)

If section 17's exception to the constitutional prohibition of stock ownership was applied to appurtenant shares, the "for the purpose of" language would be meaningless.  Since appurtenant shares are attached to specific land, a public entity who acquires and holds the land would automatically acquire the shares and would only be able to convey the shares

_____

[2] Since the phrase "for public, municipal or governmental purposes" clarifies the circumstances in which public entities can acquire and hold shares in a mutual water company or corporation (§ 17), we disagree with the City's argument, made during oral argument, that our interpretation of section 17 renders the phrase surplusage.  In any event, the rule against surplusage and other canons of construction undermine the City's interpretation of section 17 in other respects, as discussed herein.  Thus, at most, the City's argument reflects that section 17 has "a doubtful or obscure meaning," which requires us to adopt the interpretation that upholds Corporations Code section 14300.  (*Methodist Hosp. of Sacramento v. Saylor*, *supra*, 5 Cal.3d at p. 693; *Pacific Legal Foundation v. Brown*, *supra*, 29 Cal.3d at p. 180; see also *Sturgeon v. County of Los Angeles* (2015) 242 Cal.App.4th 1437, 1448 ["[t]he canon against surplusage is not absolute"].)

21

by conveying the land. (*Wheat v. Thomas*, *supra*, 209 Cal. at p. 316; *Richmond v. Dofflemyer*, *supra*, 105 Cal.App.3d at p. 763.) Thus, a public entity who owns land with appurtenant shares would acquire and hold the shares regardless of any intent to furnish a supply of water, and there would be no causal link between the intent to furnish a supply of water and the act of acquiring and holding shares. Even if the public entity acquired land with appurtenant shares because it intended to operate a public facility that would consume water, the number of shares acquired would be based on the ownership of land rather than on a need or demand for water for certain uses. (See *Thayer v. California Development Co.*, *supra*, 164 Cal. at pp. 121–122 [explaining that the number of appurtenant shares was based on the number of acres, which in turn determined the amount of water to which the landowner was entitled].)

A construction of a constitutional provision that makes " 'some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) The voters could have expressly permitted public entities to acquire and hold shares when such shares are incident to the public entities' ownership of land. Given the failure to do so, any implied limitation on legislative action must be strictly construed. (See *Dean v. Kuchel* (1951) 37 Cal.2d 97, 105.)

Corporations Code section 14300 also gives section 17 a practical construction. (See *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147 ["a practical construction is preferred"]; *Carman v. Alvord* (1982) 31 Cal.3d 318, 327 [courts construing constitutional phrases should "avoid a literalism that effects absurd, arbitrary, or unintended results"].) Since public entities can acquire or hold land for a purpose that does not require the use of water, there will likely be many situations where the public entity is holding shares in a mutual water

company with no intent to use water for a public, municipal, or governmental purpose, thereby undermining the purpose of the constitutional prohibition of stock ownership. Indeed, in this case, the City owns dozens of properties that do not have a water connection to Highlands. The City was therefore holding shares in Highlands despite no evidence of an intent to use water for public, municipal, or governmental purposes. Even if a public entity initially used water on land it owns with appurtenant shares, there may be periods where the public entity is holding the shares with no intent to use water for a public, municipal, or governmental purpose. As discussed above, this would be contrary to the plain language of section 17's exception, which authorizes public entities to acquire or hold shares "when" the shares are "so acquired or held for the purpose of furnishing a supply of water for public, municipal or governmental purposes." (§ 17.) In such situations, there would be no practical way to uphold the purpose of the prohibition of stock ownership, absent the public entity reconveying the land.

Considering these consequences, it appears the Legislature intended Corporations Code section 14300 and section 17 to work together by allowing public entities to acquire and retain ownership of land without violating the constitutional prohibition of stock ownership (through the cancellation of appurtenant shares), while permitting those public entities to obtain water for that land if needed. (Corp. Code, § 14300, subd. (a); § 17.) At the same time, section 17 allows public entities to acquire and hold non-appurtenant shares in mutual water companies or corporations to provide the territories they serve with water for public, municipal, or governmental purposes. (§ 17.)

Finally, an interpretation of section 17's exception to the prohibition of stock ownership as excluding appurtenant shares in mutual water companies

23

is not unreasonable considering the exception's "legislative" history.[3] (See *Methodist Hosp. of Sacramento v. Saylor, supra,* 5 Cal.3d at p. 694 [looking to "the prior state of the law, the evil intended to be corrected, and the legislative history of the proposed remedy" in analyzing whether a statue was a " 'possible and not unreasonable' construction of the Constitution"]; *In re Quinn* (1973) 35 Cal.App.3d 473, 483 ["[n]ew provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for"], disapproved of on another ground in *State of California v. San Luis Obispo Sportsman's Assn.* (1978) 22 Cal.3d 440, 447, fn. 6.)

An exception to the constitutional prohibition of stock ownership was first enacted in 1914, when section 31 of article IV of the California Constitution (section 31) was amended to permit irrigation districts, "for the purpose of acquiring the control of any entire international water system necessary for its use and purposes," to acquire stock in "any foreign corporation which is the owner of, or which holds the title to the part of such system situated in a foreign country." (Cal. Const., art. IV, former § 31.) The proponents of the amendment argued that it would only affect Imperial Irrigation District, because part of the canal system that "furnish[ed] water" for irrigation in Imperial county ran through Mexico. (Voter Information Guide, Gen. Elec. (Nov. 3, 1914), p. 17.) The proponents claimed that the irrigation district's control of the canal was "absolutely necessary." (*Ibid.*)

In 1932, the voters adopted a constitutional provision authorizing the City of Escondido to own stock in any mutual water company or corporation "for the purpose of furnishing a supply of water for public or municipal

---

[3] The trial court took judicial notice of the ballot materials for prior constitutional provisions that authorized certain public entities to acquire and hold stock in mutual water companies under various circumstances.

24

purposes or for the use of the inhabitants of the city." (Cal. Const., art. IV, former § 31b.) Proponents of the amendment argued that the city "can only secure its supply of water by taking it from a mutual water company" because it is "the only water company in and around Escondido," and "[t]he city can not feasibly acquire water otherwise." (Voter Information Guide, Gen. Elec. (Nov. 8, 1932), p. 16.) Two years later, this authority was extended to cities of "fifth or sixth class." (Cal. Const., art. IV, former § 31c.) The ballot pamphlet stated that the "only purpose of this amendment is to provide for additional water supply for domestic purposes" and to "help the smaller cities to increase their domestic water supply." (Voter Information Guide, Gen. Elec. (Nov. 6, 1934), p. 29.)

These ballot materials do not indicate that the drafters were concerned with public entities being able to secure access to water for individual parcels of land they owned. Rather, the 1914 provision sought to enable an irrigation district to take control of an entire water system. For the 1932 provision, the voters were informed that the City of Escondido was unable to feasibly secure water for the city and its inhabitants, thereby implying that the city as a whole needed a supply of water. Finally, by stating that the "only purpose" of the 1934 provision was to help smaller cities increase their "domestic" water supply, the ballot materials indicate that the provision was designed to ensure that certain regions within the state had access to a supply of water, to be provided by the
city serving the region. (See Oxford English Dictionary (2026) <https://www.oed.com/dictionary/domestic_adj?tab=meaning_and_use#6403234> [as of June 18, 2026] [defining "domestic" as "[e]xisting, occurring, or produced inside a particular region"].) Thus, this history is consistent with an interpretation of "furnishing a supply of water" as referring to the public

25

entity acting as a water purveyor for the region it serves. (See *Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency*, *supra*, 1 Cal.App.5th at p. 1115 [concluding, based in part on section 17's legislative history, that the purpose of the exception to the constitutional prohibition of stock ownership is "to provide a ready means for public agencies to secure water for the public they serve"].)

Then, in 1940, the voters enacted a provision authorizing the state to "hold and hereafter acquire" shares in a mutual water company or corporation "when the ownership of such stock is incident to the ownership of land heretofore or hereafter acquired by the State or necessary to secure a water supply required by a state institution, department, or agency." (Cal. Const., art. IV, former § 31d.) The proponents explained that "[m]any State institutions, hospitals and agencies of State government, . . . are faced with serious shortage of water supply" and that "[f]requently the most feasible means for securing the necessary water is and will be to acquire stock in a mutual water company." (Voter Information Guide, Gen. Elec. (Nov. 5, 1940), p. 23.)

This is the first time the drafters used language that plainly referred to appurtenant shares (i.e., "when the ownership of such stock is incident to the ownership of land"), which shows that they knew how to write the exception so as to allow public entities to acquire and hold appurtenant shares. (Cal. Const., art. IV, former § 31d.) It is apparent from the ballot pamphlet that the drafters used that language because the problem they were attempting to remedy concerned individual parcels of land owned or maintained by the state or state agencies, and they believed allowing such entities to hold both appurtenant and non-appurtenant shares would better resolve the problem.

26

However, in 1956, all the above provisions were repealed and replaced with a provision containing the same language as that in section 17, language that is similar to that in former sections 31b and 31c of Article IV. (Cal. Const., art. XII, former § 13.) The omission of any language like that in former section 31d concerning appurtenant shares may reflect a recognition that former Civil Code section 330.24 and/or public entities' ability to acquire non-appurtenant shares adequately addressed potential issues with public entities obtaining water for individual parcels of land they owned. As mentioned, beginning in 1935, former Civil Code section 330.24 (and then Corporations Code section 14300) allowed public entities to purchase water from mutual water companies at the same price they would have paid had they held appurtenant shares in the mutual water company. (Stats. 1935, ch. 305, § 1, p. 1030.) Based on these circumstances and the language used in former section 13, the Legislature, when it subsequently enacted Corporations Code section 14300, could have reasonably concluded that the electorate did not intend to include appurtenant shares within the scope of the exception to the constitutional prohibition of stock ownership.[4]

_____

[4] The trial court found that certain language in the voter information guide for article XII, former section 13 of the California Constitution supported the City's interpretation of section 17. The pamphlet stated in part that the 1956 provision would "permit governmental agencies generally to buy stock in mutual water companies if they wish to do so in order that water may be obtained for public use." (Voter Information Guide, Gen. Elec. (Nov. 6, 1956), p. 20.) On its own, this statement does not clearly convey whether the amendment was intended to allow public entities to hold shares regardless of whether it intended to be a consumer of water or a water purveyor. But given the actual language used in the constitutional provision, and because we must presume the voters were aware of former Civil Code section 330.24 when it passed the provision in 1956, the ballot materials do not persuade us that Corporations Code section 14300 is unconstitutional. (See *In re Cervera* (2001) 24 Cal.4th 1073, 1080 ["[t]he summary must yield to

The case relied on by the City, *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, is distinguishable. There, the Supreme Court held invalid a statute requiring counties and local agencies to submit to binding arbitration of economic issues that arose during negotiations with unions representing firefighters or law enforcement officers. The court concluded the statute violated article XI, section 1, subdivision (b), of the California Constitution, which states that a county's "governing body shall provide for the . . . compensation . . . of employees." (*Id.* at pp. 285–286.) The court noted that the language of the constitutional provision was "quite clear and quite specific" in that it must be "the *county*, not the state, not someone else," that would "provide for the compensation of its employees." (*Id.* at p. 285.) Because the language of the constitutional provision was clear, the court did not need to rely on any presumptions in favor of the Legislature. In contrast, here, the language of section 17's exception to the prohibition of stock ownership is not clear and unambiguous.

The City further argues that an interpretation of section 17 as prohibiting public entities from holding appurtenant shares would render the language following "furnishing a supply of water for public, municipal or governmental purposes" surplusage. That part of section 17 states, "the holding of the stock shall entitle the holder thereof to all of the rights, powers and privileges, and shall subject the holder to the obligations and liabilities conferred or imposed by law upon other holders of stock in the mutual water company or corporation in which the stock is so held." (§ 17.) The City

the statute, not the statute to the summary"].) Moreover, this section of the ballot pamphlet repeatedly mentions that the constitutional provision will enable public entities to "buy" stock and says nothing about public entities acquiring stock through the acquisition of land. (Voter Information Guide, Gen. Elec. (Nov. 6, 1956), p. 20.)

asserts that because water supplied to land with appurtenant shares may only be used with that land, an interpretation of "furnish" as referring to the distribution of water effectively "nullifies" this restriction in section 17.

The City's argument presumes that mutual water companies only issue shares that are appurtenant to land. However, Corporations Code section 14300 only requires one type of mutual water companies—those supplying water for "domestic use"—to issue shares that are appurtenant to certain lands. Public entities may acquire and hold non-appurtenant shares in other types of mutual water companies and in any other corporation, and once it does, it is subject to the same rights, privileges, and obligations that are "imposed by law" on other shareholders. (§ 17.)

In its response to an amicus curiae brief, the City also argues that " 'being a customer is not an adequate substitute for being a stockholder given the economies of scale and potential for control and coordination that come with acquisition but not with purchase.' " As Highlands notes, however, the advantages of being a shareholder in a mutual water company is less significant where the public entity merely seeks to consume water on land it owns. In particular, the economies of scale refers to the company's shareholders paying less for the acquisition and distribution of water than they would have paid absent the formation of a mutual water company. (See *Las Posas Valley Water Rights Coalition v. Ventura County Waterworks Dist. No. 1*, *supra*, 118 Cal.App.5th at p. 1189.) As mentioned, Corporations Code section 14300 addresses that advantage by allowing public entities to purchase water from a mutual water company at the same rates paid by shareholders. (Corp. Code, § 14300, subd. (a).)

Lastly, during oral argument, the City argued that harmonization of section 17 with Corporations Code section 14300 would not give effect to the

29

word "any" in section 17's phrase "[each public entity] is hereby authorized to acquire and hold shares of the capital stock of any mutual water company" because it would limit the types of mutual water companies in which public entities can own shares. We disagree. While the word "any" is "a term of broad inclusion, meaning 'without limit and no matter what kind' " (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635), we must interpret it in context of the entire constitutional provision. In doing so, it is apparent that the subsequent language in section 17—"when the stock is so acquired or held for the purpose of furnishing a supply of water for public, municipal or governmental purposes"—can be construed as limiting the scope of the phrase "any mutual water company." (See, e.g., *ibid.* ["[t]he word 'any' means that [Civ. Proc. Code] section 340.8 applies to all actions described in the statute *unless an express exception is made*" (italics added)]; *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 642.)

In sum, an interpretation of section 17 as excluding the acquisition and holding of appurtenant shares from the exception to the prohibition of stock ownership is possible and not arbitrary or unreasonable. We acknowledge that the phrase "furnishing a supply of water for public, municipal or governmental purposes" can also be construed in a manner consistent with the City's interpretation of section 17.[5] Nonetheless, we must resolve all

_____

[5] The verb "furnish" can mean "to make something available" (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1240, italics omitted, superseded by statute on other grounds as stated in *Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 61), which does not necessarily require an affirmative act on the part of the furnisher. With this definition of "furnishing," "a supply" would refer to the amount of water made available by virtue of the public entity's stock ownership. Under this construction, section 17's exception to the constitutional prohibition of stock ownership would apply where the public

doubts in favor of the constitutional validity of Corporations Code section 14300 and strike it down only where the conflict with section 17 is " 'clear and unquestionable.' " (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252.)  For the reasons discussed above, the unconstitutionality of Corporations Code section 14300 is not " 'clear and unquestionable.' " (*Ibid.*)

**D. Article XI, Section 11 of the California Constitution**

The City argues that Corporations Code section 14300 also violates article XI, section 11 of the California Constitution, because the statue delegates authority to the secretary of a mutual water company to interfere with municipal property.  Highlands responds that the City forfeited the issue because it failed to develop an argument regarding article XI, section 11 in the trial court, and, in any event, Corporations Code section 14300 is not an unlawful delegation of power to a mutual water company.  Assuming without deciding the issue is not forfeited, we agree with Highlands.

Article XI, section 11, subdivision (a), of the California Constitution provides, in pertinent part:  "The Legislature may not delegate to a private person or body power to . . . interfere with county or municipal corporation improvements, money, or property . . . ."  While primarily intended as a check on legislative interference with local financial affairs, this prohibition extends to other forms of interference.  (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 500; see *Howard Jarvis Taxpayers' Assn. v. Fresno Metropolitan Projects Authority* (1995) 40 Cal.App.4th 1359, 1368.)  However, such interference must relate to " 'purely local matters.' " (*County of El*

---

entity acquires or hold stock in a mutual water company or corporation for the purpose of making an amount of water available for public, municipal, or governmental purposes.

31

*Dorado*, at p. 500.)  Delegations of power "have been upheld 'if they . . . promote a "statewide purpose." ' "  (*Ibid.*)

The holding of stock by public entities is not a purely local concern. Section 17 expressly prohibits public entities in the state to own stock in private companies except where the public entities acquire or hold shares for the purpose of furnishing a supply of water for public, municipal or governmental purposes.  As explained above, section 17 can be construed to exclude the acquisition and holding of appurtenant shares from the scope of the exception to the constitutional prohibition of stock ownership. Corporations Code section 14300 therefore gives effect to the constitutional prohibition of stock ownership.  Thus, article XI, section 11 of the California Constitution has no applicability to this case.

Further, the Legislature may delegate authority to a private party to administer or apply the law.  "Once the Legislature has established the law, it may properly delegate the authority to administer or apply the law to *private* or governmental entities."  (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632, italics added; see *Wilkinson v. Madera Community Hospital* (1983) 144 Cal.App.3d 436, 442 ["[a] proper delegation [of authority to administer or apply the law] may be made to private or governmental entities"].)  Thus, where the Legislature has made "the fundamental policy decisions" and provides safeguards to ensure the delegatee does not act arbitrarily, there is no improper delegation of legislative authority.  (*Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1609.)

That is the case here.  The Legislature has determined that the best way to give effect to the constitutional prohibition of stock ownership is to direct the secretaries of mutual water companies to cancel appurtenant

32

shares held by public entities. As the statute requires the cancellation of all such shares without limitation, there is no room for the secretary to act arbitrarily. (§ 14300, subd. (a).) We therefore conclude there is no unlawful delegation of legislative power.

In sum, the City failed to meet its burden to demonstrate that Corporations Code section 14300 is unconstitutional. (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 180.) Because the trial court granted the motion for preliminary injunction on the ground that Corporations Code section 14300 was unconstitutional, we must remand the matter to the trial court to permit it to properly evaluate both preliminary injunction factors and exercise its discretion in the first instance.

### III. DISPOSITION

The order granting the preliminary injunction is reversed. The matter is remanded for further proceedings consistent with this opinion.

_____
LANGHORNE WILSON, J.

WE CONCUR:


_____
HUMES, P.J.


_____
BANKE, J.

*City of Clearlake v. Highlands Mutual Water Company / A172743*

34

## A172743/City of Clearlake v. Highlands Mutual Water Company

Trial Court:      Superior Court of Lake County, No. CV425596

Trial Judge:      Hon. J. David Markham

Counsel:          Law Offices of Tina Wallis, Tina Wallis for Defendant and
                  Appellant.

                  Downey Brand LLP, Rebecca R. Smith, Brian E. Hamilton,
                  and Nicolas Chapman for Plaintiff and Respondent.